IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RUBLE HECK-DANCE,**
**Plaintiff,**

v.                                                                    **CIVIL NO. 03-2248(DRD)**

**INVERSIONES ISLETA**
**MARINA, INC., et als.,**
**Defendants**

**OPINION AND ORDER**

Pending before the Court is defendants' *Isleta's Motion for Summary Judgment to Dismiss the Action for Improper Venue, Failure to State a Claim, and/or Lack of Jurisdiction* (Docket No. 51). Defendants moves the Court to dismiss the instant action as a result of a forum selection clause contained within the Dockage Agreement entered into by the instant parties wherein said parties voluntarily submitted to the jurisdiction and venue of the local state courts as to all claims relating to said Dockage Agreement. For the reasons stated herein, *Isleta's Motion for Summary Judgment to Dismiss the Action for Improper Venue, Failure to State a Claim, and/or Lack of Jurisdiction* (Docket No. 51) is hereby **GRANTED**.

**SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir.1993); Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of

the party against whom summary judgment is sought, there is no doubt as to whether a genuine issue of material fact exists. Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir.1989); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. Mack, 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non- moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968), reh'g denied, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

### ENFORCEABILITY OF FORUM SELECTION CLAUSES

It is well known that the parties to a contract may agree to litigate in a given jurisdiction. As to this matter, the Supreme Court has explained that: "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost

indispensable precondition to achievement of the orderlines and predictability essential to any international business transaction". Scherk v. Alberto-Culver Co., 417 U.S. 506, 516, 94 S.Ct. 2449, 2455 (1974). Contracts for dockage of vessels -the underlying legal concept- are maritime in nature. Fireman's Fund American Ins. Co. v. Boston Harbor Marina, 406 F.2d 917, 919 (1st Cir. 1969). Courts should enforce in maritime contracts forum selection clauses unless a party "can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching". M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916 (1972). Alternatively, a party, in maritime context, must clearly show "that a trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all statistical purposes be deprived of his day in court". Id. at 18, 92 S.Ct. at 1917.

In Bremen, a *forum non conveniens* argument was rejected by the Supreme Court as not determinative when the maritime contract contains a forum selection clause. Id. at 6-9, 92 S.Ct. at 1911-1912. Therefore, when a choice of forum selection clause is applicable, a party's arguments as to *forum non conveniens* should be excluded and the court must apply the factors delineated in Bremen. (*See* Cambridge Nutrition A.G. v. Fotheringham, 849 F.Supp. 299, 301 (S.D.N.Y. 1994)(standing for the proposition that even when a party argues the forum's inconvenience, that party must still meet Bremen's heavy burden in favor of an existing forum selection clause.) Likewise, it has been held that the mere fact that the forum selected by the parties may be inconvenient does not make the clause unreasonable especially since the alleged inconvenience was known and contemplated at the time of executing the contract. Banco Popular de Puerto Rico v. Airborne Group PLC, 882 F.Supp. 1212, 1215 (D.P.R. 1995)(citations omitted). The Airborne court, citing Bremen concluded that public policy concerns urged the enforcement of said forum selection clauses. Finally, forum clause should control absent a strong showing that it should be set

aside. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 15, 92 S.Ct. at 1916.[1]

Since federal maritime law governs the enforceability of a forum selection clause and the instant case arises from a federal jurisdiction maritime Dockage Agreement, the instant case must be examined under the applicable federal law governing the instant dispute. *See* Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522 (1991); Fletcher v. Port Marine Center, Inc., 1990 WL 255536 (D.Mass. 1990). Likewise, when a court examines restrictions in a contractual covenant of forum selection clause, the analysis is governed by the "reasonableness of notice" provided to the contracting parties. Shankles v. Costa Armatori, S.P.A., 722 F.2d 861, 867 (1st Cir. 1983) ("reasonable of notice" analysis applied to restriction on a passenger's ticket as to the time to commence an action against the cruise ship operator). Therefore, when examining under federal maritime law the "reasonable of notice" provided within maritime forum selection clause in a contract the Court must conduct a two-pronged test. Lousararian v. Isleta Caribbean, 951 F.2d 7, 8 (1st Cir. 1991)(*citing* Shankles v. Costa Armatori, 722 F.2d at 865).

Firstly, the court must examine the facial clarity of the restriction clause and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. The second part of the two prong analysis focuses on "the circumstances of the [contracting party's] possession of and familiarity with the [contract]," which necessarily involves scrutiny of "any extrinsic factors indicating the [contracting party's] ability to become meaningfully informed of the contractual terms at stake." Shankles v. Costa Armatori, 722 F.2d at 865-866. The determination of enforceability must be made on a case-by-case basis.

---

[1] The Court notes that the underlying litigation object of this case previously took place in the forum required under the contract, the then District Court of Fajardo.

## LEGAL ANALYSIS

At the outset, the court notes that plaintiffs in its opposition to the instant motion for summary judgment does not challenge the validity nor the enforceability of a forum selection clause under federal maritime law. Plaintiff's challenge is grounded in the argument that the forum selection clause as agreed by the parties was to be applicable to "all legal matters" as therein stated but because the instant case is not a "legal matter" related to the Dockage Agreement, said clause is unenforceable. Plaintiff sustains that the instant action has been pursued under diversity jurisdiction seeking remedies for Isleta's illegal actions prosecuting its claims at the local state court wherein a null and void attachment against Heck's properties was obtained.

However, since plaintiff's argument is based in the interpretation of a clause within the Dockage Agreement, its claims for relief must be examined as they occurred originally in the complaint. On September 24, 1992, the defendants filed a collection of money case against plaintiff before the local state court alleging lack of dockage payments relating to two plaintiff's vessels for the sum of $2, 463.43. (Complaint at Docket No. 1, ¶5). The local state court entered default judgment against plaintiff. Latter, pursuant to an agreement amongst the parties full satisfaction of judgment was made in the amount of $5,000. (Complaint at Docket No. 1, ¶8). Three years afterwards, in January 1997, a second case was filed by instant defendants against plaintiff regarding other unpaid dockage fees amounting to $6,985.14. However, defendant moved for the voluntarily dismissal in said case and to reopen the first case, and moved to obtain an attachment order to secure the effectiveness of the judgment in the already closed first civil case. The local court issued a Writ of Attachment against one of plaintiff's vessels, to wit the Indigo. (Complaint at Docket No. 1, ¶¶11-14).

After attachment was made on the Indigo, plaintiff filed for protection under Chapter 13 of

the Bankruptcy Code, Case No. 97-10919(SEK) and also filed an adversary proceeding against the instant defendant under Case No. 97-00065. (Complaint at Docket No. 1, ¶15). The bankruptcy case was dismissed without addressing a pending motion filed by plaintiff alleging illegal attachment and seeking return of the vessel. (Complaint at Docket No. 1, ¶15). A second bankruptcy case was filed by plaintiff and allegations relating to illegal seizure, negligence and damages against defendants were averred by plaintiff. (Complaint at Docket No. 1, ¶16). Likewise, a second adversary proceeding was filed claiming breach of contract, negligence and ancillary bankruptcy claims. (Complaint at Docket No. 1, ¶16). The second bankruptcy proceeding was dismissed and consequently, the second adversary proceeding was dismissed without prejudice. (Complaint at Docket No. 1, ¶16).

The claims as alleged by plaintiff in its complaint states firstly, a breach of contract as a result of the attachment in the first civil case filed by instant plaintiff before the local state court, the claim that had as its ground roots the dockage agreement amongst the parties. Secondly, negligence, culpable acts, and abuse of judicial process causes of action that are alleged resulting from the attachment ordered in the second civil case but executed within the first civil case (both civil cases filed before the local Fajardo state court) together with the damages resulting from the negligent action of effectuating said attachment in a case that according to plaintiff, judgment had been satisfied. Moreover, plaintiff alleges that defendant effectuated the attachment without observing throughout the process the federal maritime rules; and finally, plaintiff seeks to declare null and void the judgment entered because the Supplemental Rules of Admiralty procedure were not complied throughout the civil proceedings before the local state court.

Plaintiff in its opposition to defendants' motion for summary judgment sustains that the complaint prosecuted in this case based on defendant's illegal actions while prosecuting the case

before the local state court falls short of being covered by the Dockage Agreement forum selection clause.  The Court disagrees. The undersigned rejects plaintiff's proposed interpretation of the "all legal matters" language within the Dockage Agreement as meaning that it only relates to such "legal matters relating to the contract" but not encompassing the instant claims which the Court understands are all a consequence of the contract.  It should be noted that the genesis of all the actions between the instant parties was the Dockage Agreement and the litigation that ensued in state court relating to said Dockage Agreement.  Simply expressed, plaintiff's alleged non-compliance with its obligations as consented in the Dockage Agreement initiated all the "legal matters" before the local state court.  Judgment was entered pursuant to said agreement, judgment was executed because of plaintiff's failure to pay its dockage charges, and finally an attachment was obtained to satisfy said judgment.  Even if plaintiff provide valid defenses to what occurred in state court, the genesis of all litigation was the Dockage Agreement.

Further, defendants' lack of diligence prosecuting their claims before the local state court and alleged lack of compliance with the applicable Supplemental Rules of Admiralty procedure are related "legal matters" arising within the judicial proceedings before the local state court . Further, the attachment on the vessel was necessarily a judicial procedure to satisfy the judgment that had been entered attempting to satisfy the unpaid dockage fees under the Dockage Agreement hence all procedures contingent, and/or related to, and/or resulting from must be considered a "legal matter related to the [dockage] contract" whether said procedures are prosecuted in federal or local state court.

Further, the Court must examine whether the forum selection clause is fully applicable to the instant proceedings.  It is known that when examining the forum selection cause applicability, the court "must construe [the clause] in light of its actual purpose, as manifested by an objective

consideration of the language of the contract". <u>Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corp.</u>, 656 F.Supp. 464, 466 (S.D.N.Y. 1987)(citations omitted). Likewise, the Court must likewise examine whether the forum selection clause contained within the Dockage Agreement entered into by the parties satisfies the two prong test as set forth in <u>Shankles v. Costa Armatori</u>, 722 F.2d at 865-866. Firstly, the court must examine the facial clarity of the restriction clause and whether its language and appearance make the relevant provisions sufficiently **obvious and understandable**. Obvious is defined as "easily seen, recognized, or understood; open to view or knowledge; evident..." <u>Random House Unabridged Dictionary</u>, 2d ed., p.1339 (1993). Likewise, understandable is defined to mean "regarded as firmly communicated, related to perceiving what is meant". <u>Random House Unabridged Dictionary</u>, p. 2063-2064.

An examination of the Dockage Agreement evidences that the forum selection clause is conspicuously located within the contract. Said clause is located at the very beginning of the contract, to wit, the first paragraph identifies the lessor, the second paragraph constitutes the forum selection clause and the third paragraph provides relevant information relating to the lessee and the vessel the usage of the dockage facilities. Further, the forum selection clause is **completely typed in capital letters** at the very top of the first page of the agreement; hence the Court deems that said clause is conspicuously clear showing from the face of the agreement, and it is obvious and understandable. Therefore, the Dockage Agreement's forum selection clause easily passes muster under the first <u>Shankles</u> prong.

The second <u>Shankles</u> prong requires the Court to examine the "circumstances of the [contracting party's] possession of and familiarity with the [contract], which necessarily involves scrutiny of any extrinsic factors indicating the [contracting party's] ability to become meaningfully informed of the contractual terms at stake." The Court notes that plaintiff's acts during the

proceedings before the local state court evidence that he had knowledge and was fully aware of the forum selection clause existence and that it was enforceable upon him as signatory to the Dockage Agreement. Further, plaintiff knew that "legal matters" related to the Dockage Agreement could be enforced before the local state court and plaintiff did not challenged them rather, sought a stipulation that ended the cases before the local state court for monies collection resulting from the unpaid dockage fees.

Moreover, plaintiff's challenges to the defendants' request for dismissal based on the forum selection clause are not grounded in its lack of knowledge of the existence of the clause nor its familiarity, to the contrary, the challenge as averred by plaintiff sustains the inapplicability of the clause to the instant proceedings. Therefore, to effectively challenge the applicability of the clause to the instant proceedings, said challenge must be grounded in the knowledge and existence of the clause or that the subject matter is totally uncovered by the Dockage Agreement. But the subject matter is related to the Dockage Agreement as it was a direct consequence of the lawsuit filed related to dockage fees.

Furthermore, it is obvious that with the prominent location afforded to the forum selection clause within the Dockage Agreement the parties could easily read and fully become cognizant of the content of said covenant hence it is deemed that said clause reasonably communicated to the contracting parties its presence and it was easily understandable as to its effects. In sum, the Court deems that the forum selection clause's language, the location provided to the clause within the agreement, and the bold letters in which it was written affords reasonable information as to the clause's existence. Therefore, the instant forum selection clause passes muster under the <u>Shankles</u> second prong.

Finally, the plaintiff cannot argue that the instant case is not related or arises from a Dockage

agreement entered since contracts for the storage of vessels falls within the admiralty jurisdiction of the Court, *see* Fireman's Fund American Ins. Co. v. Boston Harbor Marina, 406 F.2d at 919.  All actions related to said contract should be deemed as "legal matters" which should be addressed applying admiralty rules to supply the legal decision.  Therefore, the Court concludes that the instant forum selection clause is applicable to the instant controversy and consequently the court lacks venue to entertain the instant matter hence the case must proceed before the local state court as the parties agreed at the time the Dockage Agreement was duly entered.

## CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** defendants' *Isleta's Motion for Summary Judgment to Dismiss the Action for Improper Venue, Failure to State a Claim, and/or Lack of Jurisdiction* (Docket No. 51).  Consequently, plaintiff's claims are hereby **DISMISSED** against the defendants **WITHOUT PREJUDICE**.  Plaintiff shall prosecute its claims before the local state courts.  **Judgment shall be entered accordingly.**

**THIS CASE IS CLOSED FOR ALL STATISTICAL PURPOSES.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 10th day of August 2005.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE